UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SAN JOAQUIN GENERAL HOSPITAL,<br><br>      Plaintiff,<br><br>   v.<br><br>BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC.,<br><br>      Defendants. | CIVIL ACTION NO.<br>1:24-CV-03153-JPB |

## **ORDER**

This matter is before the Court on San Joaquin General Hospital's ("Plaintiff") Motion to Remand [Doc. 5]. This Court finds as follows:

## **BACKGROUND**

Plaintiff is a California hospital that provides medical services (including emergency related medical services) to patients. [Doc. 1-1, p. 3]. Because Plaintiff has an emergency department, Plaintiff is required by law to provide emergency services to any patient regardless of the patient's financial status or insurance coverage. Id. at 5.

Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("Defendant") is an administrator of health benefit plans. Plaintiff alleges that Defendant instructed

members of those plans to go to the nearest emergency hospital in the event of an emergency.  Id.  In this case, Plaintiff alleges that it provided medically necessary services to six patients insured by Defendant, and that the reasonable value of those services totaled at least $1,136,031.00.  Id. at 4, 6.  Defendant, however, only paid a small portion of the full billed charges.  Id.  Indeed, Plaintiff contends that an outstanding balance of $904,793.06 remains even though Defendant authorized the treatment and impliedly agreed that it would pay full value.  Id.

Based on the foregoing, Plaintiff filed this action against Defendant on June 11, 2024, in the State Court of Fulton County.  Plaintiff seeks to recover the outstanding value of the medical services through two state law claims:  (1) breach of implied-in-fact contract; and (2) quantum meruit.  As to the breach of implied-in-fact contract claim, Plaintiff contends that through custom and practice, the parties "impliedly agreed" that Plaintiff would render medically necessary services to Defendant's members in exchange for the payment of the full value of those services.  Id. at 7–8.  In the quantum meruit claim, Plaintiff asserts that it conferred a benefit upon Defendant because it allowed Defendant "to make good on promises made to their members that their members and their families would receive and be covered for medically necessary services."  Id. at 10.

Defendant removed the action to this Court on July 17, 2024.  [Doc. 1].  In its Notice of Removal, Defendant states that removal is proper because Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act ("ERISA").  Plaintiff filed the instant Motion to Remand on August 1, 2024. [Doc. 5].  The motion is now ripe for review.

## ANALYSIS

28 U.S.C. § 1441(a), which is the removal statute, states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court.  Relevant here, district courts have original jurisdiction over federal question cases, which are those cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The burden of establishing federal jurisdiction rests with the removing party.  Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).  Significantly, removal jurisdiction is construed narrowly, and any doubts regarding the existence of federal jurisdiction are resolved in favor of remand.  Id.

As a general rule, the presence of federal question jurisdiction is governed by the well-pleaded complaint rule.  Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004).  The well-pleaded complaint rule "provides that federal jurisdiction

exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  As a result, plaintiff is ordinarily the "master of the claim," and he or she "may avoid federal jurisdiction by exclusive reliance on state law." Id.

The complete preemption doctrine provides an exception to the well-pleaded complaint rule. Davila, 542 U.S. at 208.  Under the complete preemption doctrine, a complaint that on its face raises only state-law claims can still be removed to federal court "'when a federal statute wholly displaces the state-law cause of action through complete preemption.'" Id. (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)).  Where a federal statute completely preempts a state law cause of action, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id.

Defendant contends that Plaintiff's claims are completely preempted by ERISA.  ERISA provides a uniform regulatory regime over employee benefit plans and includes "expansive" preemption provisions which are intended to ensure that employee benefit plan regulation remains exclusively a federal concern. Id.  One such preemption provision is ERISA's civil enforcement mechanism, § 502(a), which has "such 'extraordinary preemptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the

well-pleaded complaint rule.'" <u>Id.</u> at 209 (quoting <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65–66 (1987)).

In <u>Davila</u>, the United States Supreme Court set forth the following two-part analysis for determining when a claim has been completely preempted by ERISA:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. at 210. This test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) "whether no other legal duty supports the plaintiff's claim." <u>Conn. State Dental Ass'n v. Anthem Health Plans, Inc.</u>, 591 F.3d 1337, 1345 (11th Cir. 2009).

As stated immediately above, the first prong of the <u>Davila</u> test considers whether Plaintiff "could have brought [its] claim under ERISA § 502(a)(1)(B)." <u>Davila</u>, 542 U.S. at 210. This test is satisfied if (1) a plaintiff has standing to sue; and (2) a plaintiff's claims fall within the scope of ERISA. The Court will begin by addressing whether Plaintiff's claims fall within the scope of ERISA, because if

they do not, "standing to assert them is irrelevant." <u>Conn. State Dental</u>, 591 F.3d at 1350.

When considering whether Plaintiff's claims fall within the scope of ERISA, the Court must determine whether the claims could have initially been brought pursuant to § 502(a)(1)(B). This section provides that

> [a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

Some courts within the Eleventh Circuit apply a "rate-of-payment/right of payment test" for assessing whether a plaintiff's claims fall within the scope of ERISA. <u>See</u> <u>S. Fulton Dialysis, LLC v. Caldwell</u>, 428 F. Supp. 3d 1346, 1353 (N.D. Ga. 2019); <u>Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.</u>, 258 F. Supp. 3d 1323, 1327 (S.D. Fla. 2017). At the very least, the Eleventh Circuit Court of Appeals has instructed that "the 'rate of payment' and 'right of payment' distinction is a useful means for assessing preemption of healthcare provider claims based upon a breach of an agreement separate from an ERISA plan." <u>Conn. State Dental</u>, 591 F.3d at 1350.

To apply the test, courts must determine whether the plaintiff's claims challenge the rate of payment or the right to be paid. "Rate of payment claims

challenge the amount of payment for a particular service," while "[r]ight of payment claims challenge non-payment because the insurer denied the services altogether, often because the insurer deemed the services not medically necessary or experimental." S. Fulton Dialysis, 428 F. Supp. 3d at 1353–54. Notably, rate of payment claims are not preempted. Id. at 1354. On the other hand, right of payment claims are preempted. Id.

In this case, Plaintiff's claims involve the rate of payment. Indeed, Plaintiff alleges that Defendant breached an implied contract, and Plaintiff contests only the amount of payment that it received, not the extent of patients' coverage under Defendant's plans. Importantly, Plaintiff does not argue that Defendant failed to pay entirely; Plaintiff alleges only that Defendant failed to pay enough. Because Plaintiff's claims only involve underpayment, the Court finds that Defendant has failed to satisfy the first prong of the Davila test. Plaintiff's claims are thus not preempted, and remand is required.[1]

Defendant argues that the above test is inapplicable because it only applies to in-network providers who have a provider agreement. For support, Defendant

---

[1] Because Defendant has not met its burden on the first prong, the Court need not address the other requirements for complete preemption. See Borrero v. United Healthcare of N.Y., Inc., 610 F.3d 1296, 1304 (11th Cir. 2010) ("The test in Davila is conjunctive—both conditions must be satisfied for a claim to be completely preempted.").

directs the Court to the language from Connecticut State Dental that states that the test is "a useful means for assessing preemption of healthcare provider claims based upon a breach of an *agreement* separate from an ERISA plan." 591 F.3d at 1350 (emphasis added). Defendant essentially argues that without a separate written agreement, the claim will always be preempted.

The Court is not wholly convinced that a written agreement is required for the test to apply. "No part of Connecticut State Dental supports the proposition that an express written provider agreement ***must*** be present before the rate-of-payment/right-of-payment test can apply, and that, in the absence of a written agreement, any claim for payment must be preempted." Hialeah Anesthesia Specialists, 258 F. Supp. 3d at 1329. Here, Plaintiff is alleging the breach of an implied agreement, and in the Court's view, the test applies in this circumstance. See id. (determining that the test applies in a case involving allegations of an implied agreement between an out-of-network provider and an insurer).

Even if the above test does not apply, Plaintiff's claims still do not fall within ERISA's scope. Contrary to Defendant's arguments, the gravamen of Plaintiff's grievance is not that Defendant failed to pay the required amount under the plan. In this case, Plaintiff relies on two quasi-contractual theories of liability—neither of which has anything to do with the insurance plan.

Importantly, Plaintiff does not bring any claims concerning specific rights or benefits under the patients' contracts with Defendant.  See Sheridan Healthcorp, Inc. v. Aetna Health Inc., 161 F. Supp. 3d 1238, 1246 (S.D. Fla. 2016) (finding that the plaintiff's claim did not fall within the scope of ERISA because "there is not a single allegation within [the plaintiff's complaint] that discusses, alleges, or implies that [the plaintiff] seeks damages for the denial of health care benefits"). In other words, Plaintiff does not argue that under the patients' plans, Defendant should have paid more.  Rather, Plaintiff's claims are based on the "alleged shortcomings in the communications" between it and Defendant.  Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund, 538 F.3d 594, 601 (7th Cir. 2008).  Here, Plaintiff asserts that when the patients presented for treatment, Plaintiff called Defendant to verify coverage, Defendant authorized the treatment for the patients and indicated to Plaintiff that it would pay for the services.  Plaintiff further asserts that "Defendant's own conduct manifested an implicit request for [Plaintiff] to render medical necessary services to its members" because Defendant authorized the medical services and failed to make arrangement for transfer to another hospital.  [Doc. 1-1, p. 8].

In short, Plaintiff brings these claims entirely in its own right, and this is not a beneficiary's claim. Significantly, Plaintiff "is not suing 'to recover benefits due to [it] under the terms of [the] plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan,' which is precisely all § 502(a)(1)(B) provides." Franciscan Skemp, 538 F.3d at 598 (determining that ERISA did not preempt similar claims). Because Plaintiff is seeking damages arising from Defendant's alleged wrongdoing in authorizing treatment in response to Plaintiff's inquiry, the causes of action are not within § 502(a)'s scope. Consequently, the claims are not preempted.

## CONCLUSION

For the reasons stated above, ERISA does not preempt Plaintiff's claims. Accordingly, Plaintiff's Motion to Remand [Doc. 5] is **GRANTED**.[2] **IT IS HEREBY ORDERED** that this matter is **REMANDED** to the State Court of Fulton County. Defendant's Motion to Dismiss [Doc. 4] is **DEFERRED**. The

---

[2] In its Reply Brief, Plaintiff asked this Court to award attorney's fees and costs for Defendant's improper removal. Plaintiff's request for attorney's fees is **DENIED** for two reasons. First, Plaintiff made the request for the first time in its reply, and courts need not consider arguments raised for the first time in a reply brief. See United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002). Second, Plaintiff failed to show that Defendant's decision to remove the case was objectively unreasonable, especially given ERISA's complicated legal landscape.

motion should be decided by the state court.  The Clerk is **DIRECTED** to close this case.

       **SO ORDERED** this 23rd day of December, 2024.

                                        **J. P. BOULEE**
                                        United States District Judge